**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **ERICA ROBERTS,**<br><br>     **Plaintiff,**<br><br>**V.**<br><br>**ALEXANDER ACOSTA, SECRETARY,**<br>**U.S. DEPARTMENT OF LABOR**<br><br>     **Defendant.** | **COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

**COMPLAINT**

COMES NOW Plaintiff, Erica Roberts, by and through undersigned counsel, The Vaughn Law Firm, LLC, and hereby files this Complaint for Damages against Alexander Acosta, Secretary of the U.S. Department Labor (hereinafter "Agency" or "Defendant"), and states as follows:

**I      JURISDICTION AND VENUE**

1.

Plaintiff brings this action for race and gender discrimination and retaliation under Title VII of the Civil Rights Act of 1964 as amended, 42 U.S.C. § 2000(e) et seq. ("Title VII") and disability discrimination and retaliation under the Rehabilitation Act of 1973 as amended, 29 U.S.C. § 701 et seq. ("Rehab Act").  Plaintiff seeks declaratory, individual and systematic injunctive relief; actual and compensatory damages; attorney's fees; and costs of litigation for said discrimination and retaliation.

2.

This Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331 over Counts I, II and III of this Complaint, which arises out of Title VII of the Civil Rights Act of 1964 as amended, 42 U.S.C. § 2000(e) et seq.

3.

This Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331 over Counts IV and V of this Complaint, which arises out of and the Rehabilitation Act of 1973 as amended, 29 U.S.C. § 701 et seq.

4.

Venue lies in the District of Columbia under 28 U.S.C. §1391(b).

5.

All of the acts, omissions and events complained of herein took place within the District of Columbia.

## II.    PARTIES

6.

Erica Roberts ("Plaintiff") is an employee of the U.S. Department of Labor in Washington, D.C.

7.

Defendant, Alexander Acosta, is the Secretary of the U.S. Department of Labor.  He may be served process through the Attorney General of the United States, the United States Attorney's Office for the District of Columbia, and the U.S. Department of Labor.

## III.    FACTUAL ALLEGATIONS

8.

Plaintiff is an African American female.

9.

Plaintiff's immediate supervisor is Dennis Johnson, Program Analysis Officer.

10.

Plaintiff has Rheumatoid arthritis and other autoimmune conditions, as well as anxiety disorder.

11.

Plaintiff's prior EEO activity was an Informal Complaint #16-11-111, filed April 20, 2016 and Formal Complaint #DOL-16-11-108 filed July 12, 2016.

12.

Based upon information and belief, Plaintiff's supervisors were aware of Plaintiff's prior EEO activity.

13.

Plaintiff was first diagnosed with rheumatoid arthritis in 2003, and subsequently diagnosed with related conditions, including Sjogrens disease.

14.

In 2015, a physician diagnosed Plaintiff with lupus and vasculitis.

15.

Plaintiff was diagnosed with anxiety sometime prior to 2012.

16.

Plaintiff's physicians expect her autoimmune conditions to continue permanently.

17.

Plaintiff's physicians have determined that work related anxiety and stress impact Plaintiff's autoimmune conditions.

18.

The Agency became aware of Plaintiff's medical conditions in 2012 and DOL OASAM management officials became aware in 2016.

19.

PMC personnel became aware of Plaintiff's medical conditions during a staff meeting on April 4, 2016 when a management official who was the subject of Plaintiff's prior EEO complaint discussed Plaintiff's FMLA leave.

20.

Plaintiff directly informed Dennis Johnson of her medical conditions by telephone on April 7, 2017.

21.

Plaintiff spoke with Mr. Johnson by telephone on April 7, 2017 and told him his actions concerning office space and work duties were offensive and belittling.

22.

Plaintiff's symptoms became increasingly severe in 2017, and she provided medical documentation to DOL OASAM officials in the Business Operations Center and EEO.

23.

As a result of Plaintiff's autoimmune conditions and symptoms, Plaintiff is not able to consistently or predictably perform duties that require considerable time typing or standing. Plaintiff's autoimmune conditions also impact mobility.

24.

Plaintiff's physicians determined that Plaintiff is unable to perform duties in a hostile or noisy environment due to her anxiety.

25.

Plaintiff was able to perform the functions of her previous job and details as long as the environment was free of noise and interruption.

26.

In order to accommodate Plaintiff's work restrictions, Plaintiff requires a flexible work schedule, occasional telework, ergonomic chair, and leg stool.

27.

Additionally, Plaintiff needs a private office space or telework.

28.

Plaintiff was on an Environmental Protection Agency (EPA) detail from October 17, 2016 to April 14, 2017.

29.

The detail was to as SES level position and was extended due to Plaintiff's exceptional performance.

30.

On June 20, 2017, Mr. Johnson emailed Plaintiff stating OASAM supported Plaintiff's proposal to combine her office with Office of Public Affairs and OPE; however, on July 6, 2017, Plaintiff was informed the office would not be combined until a new Assistant Secretary of Administration was appointed.

31.

On September 21, 2017, Plaintiff was advised of a pending change to her Position Description.

32.

Mr. Johnson was responsible for Plaintiff's position description change, and Edward Hugler, Plaintiff's second-level supervisor, approved the change.

33.

Plaintiff expressed concerns about the position description change at that time. Plaintiff advised Mr. Johnson she was offended by his handling of the proposed reassignment and found his communication belittling.

34.

Plaintiff also brought her concerns about the hostile work environment to Acting Deputy Assistant Secretary for Administration and Management, Al Stewart, in September, 2017, and asked his advice on dealing with Mr. Johnson's harassment in a constructive way.

35.

On October 6, 2017, Plaintiff informally spoke with Shawn Hooper, Human Resources, about harassment by Mr. Johnson and his intentional interference with a potential detail.

36.

Mr. Hooper contacted Mr. Johnson on October 10, 2017, and based on Mr. Johnson's reaction to Mr. Hooper's call, the situation worsened.

37.

Mr. Johnson questioned Plaintiff as to why she contacted Shawn Hooper.

38.

Mr. Johnson told Plaintiff that he was giving Plaintiff a tentative "effective" rating and declined to discuss her performance in general or on the detail.

39.

Mr. Johnson did not consider Plaintiff's performance on the EPA detail in Plaintiff's annual performance rating.

40.

During the detail, Plaintiff provided notes to Mr. Johnson and met with him to discuss her work during the detail.

41.

At this time Mr. Johnson had exceeded his acting term as Acting Director, per OPM guidance.

42.

Mr. Johnson told Plaintiff to comment in writing, which she provided to Mr. Hugler, Plaintiff's second-line supervisor, through Mr. Johnson, on October 17, 2017.

43.

Additionally, October 10, 2017, Mr. Johnson told Plaintiff that he and Mr. Hugler had signed all the paperwork for the change to the Position Description and that it would be effective immediately. Complainant expressed concerns again. Plaintiff was notified formally of the new position by the electronic personnel file on October 20, 2017.

44.

Mr. Hugler has a history of retaliating against "trouble makers" and his refusal to adjust Plaintiff's performance appraisal was punishment for Plaintiff's prior EEO Complaint.

45.

Neither Mr. Johnson nor Mr. Hugler provided Plaintiff a reason for declining to consider Plaintiff's performance on the detail.

46.

Mr. Johnson considered the detail assignments when conducting evaluations for Plaintiff's co-workers, who had not engaged in prior EEO activity and were not African-American females.

47.

Mr. Johnson also made disparaging comments about Plaintiff that reflect stereotypes associated with African Americans, such as referring to her as combative and questioning his decisions.

48.

Moreover, Mr. Johnson worked to have Plaintiff reassigned, without her knowledge, to supervise the only African American male in the office in a less visible administrative position.

49.

The two African Americans in the office were the only employees assigned that work.

50.

Mr. Johnson also displayed disparate treatment towards all female employees, including Plaintiff, in the assignment of private offices.

51.

Mr. Johnson emailed Plaintiff on November 6, 2017, stating that Mr. Hugler reviewed and signed Plaintiff's appraisal with an "effective" rating.

52.

Plaintiff's previous position required support and interactions with high-ranking officials from several Federal agencies, which is not required in the new position. Plaintiff's new position includes responsibilities previously completed by GS-13 employees such as considerable data entry and required only limited strategic thinking with no thought leadership.

53.

Mr. Johnson refused to answer Plaintiff's questions about responsibilities, expectations, and training for the new position, and the new position did not align with the previous direction of her office or position.

54.

Plaintiff does not possess the required expert knowledge and mastery described in the new position classification document as she did with the previous position description.

55.

Plaintiff was not provided a reason for the position description change but was led to believe the position would be continued under a different office, to which she would be assigned.

56.

The reassignment was consistent with Mr. Johnson's practice of assigning menial work to African American employees while non-African-American employees were assigned higher profile, analytical projects.

57.

Mr. Johnson's decision to change Plaintiff's position was also consistent with his practice of intentionally placing females in a position of less visibility and prominence.

58.

Mr. Johnson's decision to move Plaintiff from a role where she excelled, to an administrative position in which she had no experience, was made upon gender-based stereotypes.

59.

Plaintiff has experienced health complications that correspond with Mr. Johnson's actions, and in those cases, she has sought medical attention, took leave, and changed medication.

60.

Plaintiff contacted the CRC again in December, 2017, and had an intake interview with a CRC representative; however, no action was taken on her reports.

61.

Mr. Johnson was deliberately an unnecessarily slow to approve and/or respond to several requests for accommodations.

## IV.   CLAIMS FOR RELIEF

### COUNT I: VIOLATION OF 42 U.S.C.§2000(E) ET SEQ.
### TITLE VII - RACE

62.

Plaintiff incorporates by reference paragraphs 1-61 of her Complaint as if fully set forth herein.

63.

Defendant, through its agents or supervisors, unlawfully discriminated and denied Plaintiff equal employment opportunities because of her race when it denied her equal employment opportunities, imposed unwarranted transfers and other tangible adverse actions and created a hostile work environment in violation of Title VII.

64.

As a direct and proximate result of the illegal employment discrimination by Defendant, Plaintiff has suffered, and continues to suffer, severe pain and suffering and extreme mental anguish and emotional distress. Plaintiff has suffered and will continue to suffer a loss of earnings and other employment benefits and job opportunities.

65.

Plaintiff is informed and believes that the outrageous conduct of Defendant described above was done with malice and with conscious disregard for her federally protected rights. Defendant, through its officers, managing agents and/or other supervisors authorized and/or ratified the unlawful conduct.

WHEREFORE plaintiff respectfully prays this Court:

(a) To award her, under Title VII, all the back and front pay and fringe benefits she has lost as a result of Defendant's unlawful discrimination against her;

(b) To award her, under Title VII, a position consistent with her experience and training;

(c) To award her compensatory damages in an amount to be proven at trial;

(d) To award her reasonable attorney's fees and costs of this action; and

(e) To award her such other and further relief as this Court deems just and proper.

## COUNT II: VIOLATION OF 42 U.S.C.§2000(E) ET SEQ.
## TITLE VII - GENDER

66.

Plaintiff incorporates by reference paragraphs 1-65 of her Complaint as if fully set forth herein.

67.

Defendant, through its agents or supervisors, unlawfully discriminated and denied Plaintiff equal employment opportunities because of her gender when it denied her equal employment opportunities, imposed unwarranted transfers and other tangible adverse actions and created a hostile work environment in violation of Title VII.

68.

As a direct and proximate result of the illegal employment discrimination by Defendant, Plaintiff has suffered, and continues to suffer, severe pain and suffering and extreme mental anguish and emotional distress. Plaintiff has suffered and will continue to suffer a loss of earnings and other employment benefits and job opportunities.

## COUNT III: VIOLATION OF 42 U.S.C.§2000(E) ET SEQ.

## TITLE VII - REPRISAL

69.

Plaintiff incorporates by reference paragraphs 1-68 of her Complaint as if fully set forth herein.

70.

By the actions set out above, Defendant subjected Plaintiff to unlawful retaliation and denied her the rights and privileges secured by Title VII, when it denied her professional opportunities for which she was qualified, failed to provide her with, imposed unwarranted transfers and other tangible adverse employment actions and created a hostile work environment because she had engaged in protected activity under the Act.

71.

As a direct and proximate result of the illegal employment discrimination by Defendant, Plaintiff has suffered, and continues to suffer, severe pain and suffering and extreme mental anguish and emotional distress. Plaintiff has suffered and will continue to suffer a loss of earnings and other employment benefits and job opportunities.

72.

Plaintiff is informed and believes that the outrageous conduct of Defendant described above was done with malice and with conscious disregard for her federally protected rights. Defendant, through its officers, managing agents and/or other supervisors authorized and/or ratified the unlawful conduct.

WHEREFORE plaintiff respectfully prays this Court:

(a) To award he, under the Title VII, all the back and front pay and fringe benefits he has lost as a result of defendant's unlawful discrimination against him;

(b) To award her, under the Title VII, a position consistent with her experience and training;

(c) To award her compensatory damages in an amount to be proven at trial;

(d) To award her reasonable attorney's fees and costs of this action; and

(e) To award her such other and further relief as this Court deems just and proper.

## COUNT IV: VIOLATION OF 29 U.S.C. § 701 ET SEQ.

## VIOLATON OF THE REHABILITATION ACT

73.

Plaintiff incorporates by reference paragraphs 1-72 of her Complaint as if fully set forth herein.

74.

Defendant, through its agents or supervisors, unlawfully discriminated and denied Plaintiff's equal employment opportunities because of her disabilities when it denied her equal employment opportunities, failed to provide her with reasonable accommodations, imposed unwarranted transfers and other tangible adverse actions and created a hostile work environment in violation of the Rehabilitation Act.

75.

As a direct and proximate result of the illegal employment discrimination by Defendant, Plaintiff has suffered, and continues to suffer, severe pain and suffering and extreme mental anguish and emotional distress. Plaintiff has suffered and will continue to suffer a loss of earnings and other employment benefits and job opportunities.

76.

Plaintiff is informed and believes that the outrageous conduct of Defendant described above was done with malice and with conscious disregard for her federally protected rights.

Defendant, through its officers, managing agents and/or other supervisors authorized and/or ratified the unlawful conduct.

WHEREFORE plaintiff respectfully prays this Court:

(a) To award her, under the Rehabilitation Act, all the back and front pay and fringe benefits she has lost as a result of defendant's unlawful discrimination against him;

(b) To award her, under the Rehabilitation Act, a position consistent with her experience and training;

(c) To award her compensatory damages in an amount to be proven at trial;

(d) To award her reasonable attorney's fees and costs of this action; and

(e) To award her such other and further relief as this Court deems just and proper.

## COUNT V: VIOLATION OF 29 U.S.C. § 701 ET SEQ.
## REPRISAL UNDER THE REHABILITATION ACT

77.

Plaintiff incorporates by reference paragraphs 1-76 of her Complaint as if fully set forth herein.

78.

By the actions set out above, Defendant subjected Plaintiff to unlawful retaliation and denied her the rights and privileges secured by the Rehabilitation Act, when it denied her professional opportunities for which she was qualified, failed to provide her with reasonable accommodations, imposed unwarranted transfers and other tangible adverse employment actions and created a hostile work environment because she had engaged in protected activity under the Act.

79.

As a direct and proximate result of the illegal employment discrimination by Defendant, Plaintiff has suffered, and continues to suffer, severe pain and suffering and extreme mental

anguish and emotional distress. Plaintiff has suffered and will continue to suffer a loss of earnings and other employment benefits and job opportunities.

80.

Plaintiff is informed and believes that the outrageous conduct of Defendant described above was done with malice and with conscious disregard for her federally protected rights. Defendant, through its officers, managing agents and/or other supervisors authorized and/or ratified the unlawful conduct.

WHEREFORE plaintiff respectfully prays this Court:

(a) To award her, under the Rehabilitation Act, all the back and front pay and fringe benefits he has lost as a result of defendant's unlawful discrimination against him;

(b) To award her, under the Rehabilitation Act, a position consistent with he experience and training;

(c) To award her compensatory damages in an amount to be proven at trial;

(d) To award her reasonable attorney's fees and costs of this action; and

(e) To award her such other and further relief as this Court deems just and proper.

## JURY DEMAND

Plaintiff respectfully requests a jury trial on all issues.

Respectfully submitted, this 25th day of February, 2019.

*Attorneys for Plaintiff*

**THE VAUGHN LAW FIRM, LLC**

/s/ Christopher D. Vaughn
Christopher D. Vaughn, Esq.
Georgia Bar No. 726226

315 W. Ponce de Leon Avenue
Suite 380
Decatur, Georgia 30030
phone: 404-378-1290; facsimile: 404-378-1295
cvaughn@thevaughnlawfirm.com